CHARLES HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 59299.    Promulgated August 29, 1934.

*A. A. Smith, Esq.*, for the petitioner.
*Chester A. Gwinn, Esq.*, for the respondent.

OPINION.

ARUNDELL: The parties have signed and submitted two stipulations covering the facts in great detail, so we have related only such facts as may be necessary to an intelligent discussion of the question. The Commissioner has determined the deficiency on the ground that the petitioner realized a gain when he exchanged securities owned by him for stock of a newly organized corporation, while petitioner urges that he falls within the nonrecognition provisions of section 112 (b) (5)[1] of the Revenue Act of 1928.

---

[1] Sec. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of .the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(j) *Definition of control.*—As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

Pacific Bancorporation was a creature of petitioner and was organized on July 7, 1928, for the purpose of holding and dealing in bank stocks. The original articles of incorporation provided for 9,000 shares of class A preferred stock of no par value, and 1,000 shares of class B common, also of no par value. The common alone was to have voting rights unless there was a failure to pay dividends for two consecutive years, and petitioner subscribed for all of this class at the first meeting of the incorporators on July 27, 1928. With the increase in the number of shares on August 2, 1928, to 50,000, divided into 45,000 shares of class A preferred and 5,000 shares of class B common, petitioner on the same day subscribed for the additional 4,000 shares of common. Later the same day the directors of Pacific Bancorporation accepted petitioner's offer to settle his two subscription agreements by transferring to the corporation certain securities and cash.

At this point petitioner contends there was a transfer of securities for stock which brings the case under section 112 (b) (5) of the Revenue Act of 1928 and, as this transaction left him in control of the newly organized company, there was no present recognition of gain or loss.

If we could strike a balance on that date and treat the transactions as fully consummated, the petitioner might prevail. But there are several matters that stand in the way of so viewing the situation on that date.

It should be remembered that the general rule of the statute is to recognize gain or loss on the exchange of property (sec. 112 (a)), and it is only in the specifically excepted cases that gain or loss is not recognized. The taxpayer seeking the benefit of the non-recognition provisions must bring himself unequivocally within their terms. *Tex-Penn Oil Co.*, 28 B.T.A. 917, 954.

The statute relied upon by petitioner refers to the transfer of property to a corporation " solely in exchange for stock or securities in such corporation " and where immediately after the exchange the transferor is in control of the corporation through the ownership of at least 80 percent of the voting stock and of all other classes of stock.

This statute envisions a completed transfer, a fully consummated exchange of property for stock or securities. Where, as here, there is a plan for the launching of a corporation which contemplates bringing in cash and various kinds of property in exchange for stock, we cannot apply the statute to a single step in the plan and disregard all others which may be of equal importance. In applying similar provisions of the 1921 Act we have held that " the question of control is to be determined by the situation existing at the

time of the completion of the plan rather than at the fulfillment of one of the intermediate steps." See *Wilbur F. Burns*, 30 B.T.A. 163, 172, and cases cited. The reasons for this are obvious. If the participants in a complicated reorganization, or the Government, were left free to determine tax liability upon a single step, the result might well be entirely out of harmony with the realities of the case and the actual situation of the taxpayer. Moreover, as the best laid plans sometimes go awry, the taxpayer might find his ultimate situation entirely different from the one he contemplated at some intermediate stage of the proceedings.

The matter of petitioner's claimed control on August 2, 1928, has two aspects. First, assuming that the 5,000 common shares of Pacific Bancorporation stock were all of its outstanding stock on August 2, it is difficult to see how petitioner was in control through ownership. Not only was the stock not issued at that date, but the property that petitioner was to exchange for it was not then in existence. His offer was to exchange 8,000 shares of West Coast Utilities Corporation stock in partial payment for the Bancorporation common stock. It is stipulated that the West Coast Utilities Corporation was not organized until August 27, 1928. Although it is stipulated that the interim certificates were accepted by the Bancorporation as full compliance with petitioner's offer, it is not stipulated nor shown when the substitution was accepted, and the fact remains that at August 2 he was not in a position to deliver the stock offered. It may well be that the reason for delaying the issuance of the Bancorporation stock to petitioner until September 6, or later, was that the West Coast Utilities Corporation was not organized until shortly before that time and the directors wanted assurance that the organization would be completed and the stock forthcoming. There is also a discrepancy in dates that has not been explained. According to the copy of the minutes of the directors' meeting in evidence, petitioner's offer, stated to be in writing, was voted upon at the meeting of August 2, 1928. The copy of the written offer in evidence is dated August 11, 1928. Moreover, petitioner's offer to exchange stock for stock was only part of the offer. His entire subscription amounted to $317,500 and the West Coast Utilities stock was to take care of $200,000 of this. The balance was to be paid in cash, but this was specifically stated to be contingent upon Bancorporation purchasing four blocks of stock from petitioner for the sum of $226,200. No time limit was set on this purchase and it is not shown when it was consummated. In view of these several considerations we do not believe that petitioner can be said to have been the owner of the common stock of Bancorporation on August 2, 1928.

The other aspect of the question of control depends upon the position held by other subscribers. On and prior to August 2, 1928, a number of persons, not including petitioner, had subscribed for 2,069 shares of preferred stock of Bancorporation, such subscription being payable partly in cash and partly in various securities. As early as July 31, 1928, there had been paid in on these subscriptions $7,985, which was then on deposit to the credit of Bancorporation. Petitioner argues that these were conditional subscriptions only, subject to acceptance by the directors, and as they had not been accepted by the directors at August 2, 1928, the preferred stock so subscribed for cannot be regarded as outstanding stock on that date. As above pointed out, petitioner's subscription was conditioned upon Bancorporation purchasing stock from him at some unnamed date. If it cannot be said that stock became outstanding until fulfillment of all conditions, it must follow that none of Bancorporation's stock was outstanding on August 2, from which it would follow that petitioner could not have been in control of any of it on that date. We think the rights of the subscribers to the preferred stock on August 2 must be regarded as equal to those of petitioner to the common stock. Whatever those rights were we need not decide. The stipulation is that the minutes of Bancorporation do not show any formal action at any time in respect of acceptance of subscriptions to the preferred stock. However, the stock was eventually issued, and when, before that, interim certificates were issued they were dated back to the subscription dates. This fact, and the acceptance of the cash paid in by depositing it to the credit of Bancorporation, indicates most strongly that the subscriptions were considered to be effective as of their several dates.

Petitioner strenuously insists that August 2, 1928, is the crucial date for the determination of the question here presented; that on that date he exchanged stock for stock of Bancorporation, and that immediately after such exchange he was in control of Bancorporation. We cannot agree with him for reasons above given, which we summarize here. We are not satisfied that there was an exchange of stock for stock on the date mentioned. There was an offer to acquire Bancorporation stock partly in stock and partly for cash. This appears in one place in the record as being accepted on August 2, but in another the offer appears not to have been made until August 11. Petitioner was not in a position to complete his offer, for the corporation whose stock he offered was not then in existence. His offer related to only one class of stock and at that time there were on file subscriptions to a substantial portion of the other class on which money had been paid in and accepted by Bancorporation, and the rights of such subscribers to the preferred stock appear

to have been equal to those of petitioner to the common stock. Consequently petitioner has failed to prove either a completed exchange on the date said to be the effective date, or that he was in control through the 80 percent ownership required by statute.

The case of *Carel Robinson*, 19 B.T.A. 751, cited by petitioner, does not support his contentions here. In that case the taxpayer purchased a coal lease which he agreed to turn in to a corporation to be organized. The corporation was organized in June 1922. The property had been purchased in May of that year by petitioner under court order of sale and he then entered into possession, but by reason of the court proceedings he did not acquire a deed until November. Upon organization of the corporation petitioner subscribed for all of its stock except qualifying shares. We held that the effective date of the exchange of the property for stock was in June, when the directors of the corporation met and directed that the lease be copied into the records. Several distinctions are at once apparent. In the *Robinson* case the property turned in was in existence and required but certain formalities before actual turning in. Here, as above pointed out, the West Coast Utilities Corporation had not been organized at the time of petitioner's offer. In the *Robinson* case the taxpayer had subscribed for all the stock, whereas in this case petitioner had subscribed for only one class of stock and there were other subscriptions for the other class of stock.

After this case was heard petitioner moved that the deficiency proposed by the respondent be abated by reason of a decision entered in the case of *Pacific Bancorporation*, Docket No. 63206. It appears that in that case Bancorporation sold some or all of the West Coast Utilities Corporation stock turned in to it by petitioner, and in computing the gain realized the respondent used as a basis the cost thereof to petitioner. When the case was called for hearing no appearance was entered, and upon motion of counsel for respondent the case was dismissed for failure to prosecute and decision was entered for the respondent. Petitioner's motion in this case was denied, but is renewed in his brief. It is sufficient to say that the default decision entered in Docket No. 63206 was not an adjudication on the merits and cannot in any way operate to bar the respondent from maintaining this cause or prevent our determination of the question presented on the issues raised.

*Decision will be entered under Rule 50.*